## Strohl *versus* Levan.

*Trespass for Injury committed by Son of Defendant.—Liability for Negligence and Misconduct.—Trespass and Case distinguished.*

1. Trespass will lie against a father for an injury committed by his team, when driven by a son with whom he was riding at the time.

2. Though a binding direction to the jury by the court, that the defendant was liable in an action brought against him for damages resulting from the injury, would be error, yet where the question of liability under the evidence was fairly left to the jury, who found for the plaintiff, under proper instructions that the defendant was only answerable for carelessness or wilful misconduct, and not if the damages resulted from accident or mutual negligence, the judgment will not be reversed.

ERROR to the Common Pleas of *Carbon county.*

This was an action of trespass brought April 22d 1857, by Francis Levan against Nicholas C. Strohl, to recover damages for injury to plaintiff by a collision which occurred between him and defendant on the public highway. The defendant pleaded *non cul,* and on this issue the cause was tried.

Some time in March 1856, the parties to this suit, with others, were engaged with their teams in hauling the goods of one of their neighbours, who was moving. The defendant, with his wife and some others were riding in his wagon, which was drawn by four mules, driven by his son. The plaintiff, who with his wife and child were in a light one-horse wagon, were travelling in

3 WR.—12

[Strohl *v.* Levan.]

the same direction, and attempted to pass the team of defendant at a level place in the road near the top of a hill.

The evidence showed that Levan had passed the other teams that were behind that of Strohl, without difficulty; that when he approached Strohl, the mules were started at a trot, which was kept up in the middle of the road for some twenty or twenty-five yards. Levan increased his speed and passed Strohl, who followed on until he arrived at the brow of the hill. Here an effort was made to brake the wheels, but the mules became entangled in the harness and ran off down the hill. The plaintiff drew up the horse and wagon as near to the roadside as he could, but not far enough to avoid the collision which took place, and by means of which his buggy was overturned and broken, and his person injured.

It was also proven that the driver of Strohl's team was riding sideways when he reached the brow of the hill, and that he made no effort to moderate his speed until the descent of the hill had been commenced.

The defendants' counsel requested the court to charge the jury,

1. If the act complained of was accidental and beyond the control of the defendant's servant or driver to prevent it, then the defendant in this case is not guilty of a trespass, and the action of trespass cannot be sustained.

2. That, unless the act complained of was done by the direction or command of the defendant to the driver or servant, then the defendant would not be liable in an *action of trespass* for the act of his driver or teamster, and could only be made liable in an action of trespass on the case for negligent or unskilful driving of his servant.

3. That if the plaintiff was in any fault in causing this injury to himself, he cannot recover in this case.

The court below (BARRETT, P. J.,) affirmed the points of defendant, and charged the jury in substance:—

"The action is trespass, and the suit is well brought in that form. The act was done by the defendant himself, and not by his servant. He was himself sitting upon his wagon, and could have directed the movements of his team. True, his son held the lines, and was managing the horses at the time; but when the cause of the injury originated, the defendant, by his silence under the evidence, approved of what was done. He did not disapprove of it.

"Before the defendant's team approached the hill or commenced to descend it—when it was upon level ground—the plaintiff, who with his wife and child were travelling in the same direction in a light carriage with one horse, attempted to drive past the heavy team of the defendant. This he had a right to do. It was the duty of the defendant not only to allow him to pass, but to have

[Strohl v. Levan.] ·

facilitated his movements in that way. It was clearly his duty to have yielded part of the road if he could. If not, he should have stopped his team and have allowed the plaintiff to pass. He was not asked to do either. The plaintiff was willing to make his way round the wagon or team. If you believe the evidence, the defendant was not willing that he should do so, but, sitting on his wagon with a load upon it, and four mules attached to it, allowed his son to start the team at a rapid rate to prevent his passage. Failing in that, the whip was applied, and the team pursued the light carriage, doubtless with a view of punishing plaintiff for having accomplished a passage round them. If such was the case the act was wrong, and the party deserves to be punished. You may find from the evidence that the cause of the subsequent disaster dated back to the time when the vehicle passed, before the descent of the hill was approached. If you believe the evidence of William Bartholomew, the mule team was driving at so rapid a rate that it could not be taken up at the brow of the hill. The attempt was made to stop and brake the wagon; in the effort the mules became entangled in the harness, and ran off down the hill; the plaintiff got out of the road as far as he could, but not far enough to escape the damage; a collision took place; his buggy was overturned and broken in pieces; the defendant's team and wagon did the act; was it done in such a manner and under circumstances that render him liable for the damages sustained?

"If the damage was the result of negligence on the part of the plaintiff he cannot recover; or if it was caused by the mutual fault of both parties he cannot recover.

"If the damage was caused by the carelessness or the wilful conduct of the defendant, before the descent was approached, or at the place of the collision, he is clearly liable, and it does not matter which place. If an attempt was made to prevent the carriage from passing, it was wrong; if, after it had gone by, an effort was made to pursue it for the purpose of annoying or intimidating the driver, the act was wrong; if in doing so the driver lost control of his mules, and thereby caused the injury, he must answer in damage to the plaintiff; in that case the fault was with the defendant. The evidence does not show either negligence or wilful wrong on the part of the plaintiff; he was, comparatively, a stranger in the country; the defendant was well acquainted with the road; he knew that a long and rapid descent was before them, and it is for the jury to say whether he approached it with a loaded wagon in an ordinarily careful or skilful manner. It is not enough to answer that he did not intend to injure the property of the plaintiff; he was bound to exercise ordinary skill and care to avoid such a result; he should have exercised his rights upon that highway with a due regard

[Strohl *v.* Levan.]

to the rights of others; if his mules ran away—if you believe the evidence—it was the application of the whip that first started them; if prudent management would have prevented the collision, then the defendant is clearly liable.

" If he is liable, the measure of the damage should be compensation for the injury done to plaintiff's personal property; he can only recover for the damage done to his horse and buggy; if the defendant was in no fault, you should find for him."

Under these instructions there was a verdict and judgment in favour of plaintiff for $80.

Whereupon the defendant sued out this writ, and assigned here for error the following matters, to wit:—

1. That the court erred in saying to the jury that " The action is trespass, and the suit is well brought in that form. The action was done by the defendant himself, and not by his servant; he was himself sitting upon his wagon, and could have directed the movements of his team." This being a question of fact to be determined under the evidence, should have been submitted to the jury for their decision.

2. The court erred in charging the jury that " The defendant, by his silence, under the evidence, approved of what was done." No non-action amounting to such *force* as is necessary to constitute an act of trespass.

3. The court erred in charging the jury that " If an attempt was made to prevent the carriage from passing, it was wrong. If, after it had gone by, an effort was made to pursue it for the purpose of annoying or intimidating the driver, the act was wrong. If in doing so the driver of the team lost the control of his mules, and thereby caused the injury, he must answer in damages to the plaintiff. In that case the fault was with the defendant."

4. The court erred in charging the jury that " The evidence does not show either negligence or wilful wrong on the part of the plaintiff." That being a question that should have been submitted to and decided by the jury.

5. The court erred in charging the jury that " It was the duty of defendant not only to allow him (the plaintiff) to pass, but to have facilitated his movements in that way." Thus intimating opinion to the jury that defendant's driver was in fault.

6. The court erred in not charging as desired by defendant's first point. Which point, although affirmed, was not addressed, or made part of the charge to the jury.

7. The court erred in not charging as desired by the defendant's second point. Which point, also, although affirmed, was not made part of the charge to the jury as requested.

[Strohl v. Levan.]

*H. B. Burnham*, for plaintiff in error.—This action is "trespass." The summons issued was "to answer Francis Levan of a plea of trespass." The *narr.* has three counts, which are substantially the same, to wit: "with force and arms, &c.," and "with great force and violence," breaking the wagon of said Francis Levan, injuring, bruising, and wounding him. The *allegata* is trespass, which is defined to be, "An unlawful act committed *vi et armis*, to the person, property, or relative rights of another:" Bouv. Law Dict. p. 600; Chitty's Pleadings, vol. 1, p. 166; Legaux v. Feasor, 1 Yeates 586. The gist of the action is the immediate force connected therewith and directly applied: Smith v. Rutherford, 2 S. & R. 358.

This force must be applied directly, procured, or ordered, by the party charged, but *farther* than this responsibility has never been held to attach. But was the act complained of *trespass at all?* If the plaintiff in error is responsible, is it not for the negligence or unskilfulness of his servant? In 2 H. Blackstone 432, it was said, "It is difficult to put a case where the master could be considered a trespasser for an act of his servant, *which was not done by his command.*" In the case of Philadelphia *et al.* Railway Company v. Wilt, 4 Wharton 147, the same principle is affirmed: Yerger *et ux.* v. Warren, 7 Casey 322. The court erred in directing the jury that the action was well brought in the form of trespass, but should have instructed the jury that "if the particular wrong complained of was done by the orders of the defendant, or with his *direct* assent, at the time, he was a trespasser; and that without such order or *direct assent* he was not liable;" that something more than mere *silence* was necessary to *constitute* such "*direct assent:*" Welch v. Cooper, 8 Barr 217. The evidence certainly presents no such case as authorized the court below to say to the jury that "*the act was done by the defendant himself, and not by his servant:*" Childerston *et al.* v. Hammon, assignee of Rosenberger, 9 S. & R. 68; Fisher v. Kean, 1 Watts 279; Cummings v. Cummings, 5 W. & S. 556; McGee v. Northumberland Bank, 5 Watts 32; Delaney v. Robinson, 2 Wh. 503; Baker v. Lewis, 4 Rawle 356; Work v. McClay, 2 S. & R. 415; Hershey v. Hershey, 8 Id. 333; Sampson v. Sampson, 4 Id. 329.

The matters of exception in plaintiff's third, fourth, and fifth specifications of error, are opinions and judgments of fact, or binding directions which gave the jury reason to infer that they were precluded from considering the facts, and are therefore error under the authorities before quoted. When contradictory testimony appeared in the cause, how could the court undertake its decision without trespassing upon the province of the jury?

But there was express error in saying to the jury that "It was the duty of defendant not only to allow him (plaintiff)

to pass, but to have facilitated his movements in that way," when there was no *request* made by him for that purpose, or other evidence showing his right or desire to do so.

In Bolton *v.* Colder & Wilson, 1 Watts 364, it is held that "if there is not space for one traveller to pass another, that it is the duty of the other, *on request made,* to yield a share of the road, if practicable."

The sixth and seventh specifications of error refer to the failure of the court below to charge as desired. The court marked the points "affirmed" in form, but do not refer to them in their charge, either specially or generally, to communicate them as matter of law, in the case; but on the contrary—they have *negatived* the matter of the points proposed! If the points proposed were correct statements of law, the plaintiff was entitled to have them embodied in the charge of the court below, and to have had the benefit of them before the jury, in their consideration of the evidence: Shafer *v.* Landis, 1 S. & R. 449; Hamilton *v.* Minor, 2 Id. 70; Vincent *v.* Huff, 4 Id. 298; Noble *v.* McClintock, 6 W. & S. 62; Kline *v.* Johnson, 12 Harris 72; Pennsylvania Railroad Company *v.* Zebe *et ux.,* 9 Casey 323.

*Charles Albright,* for defendant in error.—The action is trespass. The counsel for the plaintiff in error thinks it should have been trespass on the case, and this really is the question for review here. It constitutes the first exception of plaintiff in error. "*Trespass vi et armis,*" is the technical name of the action of trespass for injuries to the person or property, being the proper remedy whenever the act complained of is *directly* and *immediately* injurious, or was done with direct violence, which the law will in such cases imply, whether it was actually used or not; hence the injury is said to have been committed with force and arms: Burrill's Law Dictionary, part 2, p. 997.

It is true, as stated in Smith *v.* Rutherford, 2 S. & R. 358, that "the criterion of trespass is force directly applied," but this may be done by a servant at the instance of his master: 1 Chitty's Plead. 180; 2 Greenl. 224. "When an injury is caused immediately by the act of another, whether wilfully or carelessly, trespass is the proper remedy:" Bacon's Abr., vol. 9, pp. 44, 446.

"It lies against an infant or feme covert for procuring another to commit an assault and battery:" Troubat & Haly, vol. 2, p. 44.

Yerger *et ux. v.* Warren, 7 Casey 322, affirms the ruling in this case.

"Though a party driving on a public road, should lose all control of his horses, and an injury ensues in consequence, yet if the jury believe that the loss of control was the result of the

[Strohl v. Levan.]

defendant's *prior fault*, the plaintiff may recover :" Kennedy v. Wrag, Brightly's Rep. 186.

The cases of Welsh v. Cooper, 8 Barr 207; Childerston v. Hammond, &c., 9 S. & R. 68; Fisher v. Kean, 1 Watts 279; and Cummings v. Cummings, 5 W. & S. 556, have no bearing whatever for the purpose for which they seem to be introduced.

Great stress is put upon the following words: "*The act was done by the defendant himself, and not by his servant.*" This is the language of the court; and was used because the plaintiff in error insisted that the plaintiff below had mistaken his remedy; that, instead of trespass, the action should have been trespass on the case, and was anxious that the court should so charge the jury, and thus prevent a recovery of damages in this form.

The team that was driven belonged to plaintiff in error. It started from his house the morning of the day on which the accident occurred. He was with it all day, and it was subject to his order and control. He sat behind it, and at his command it could have been turned upon an entirely different mission from that on which it was employed. His servant was driving it, and under no aspect of this case could an action have been sustained against this servant.

It was the act of the master, and whether it amounted to a trespass or an action on the case—the language of the court, that "the act was done by the defendant himself, and not by his servant," was eminently proper, and not a subject of error.

The question as to whether the form of action should have been trespass or case, was a question of law for the court to pass upon, and not to be submitted to the jury; indeed, to have done so would have been error. But it was for the jury to say whether, under the evidence, the plaintiff was entitled to recover, and whether the evidence sustained his action; and this was fairly and broadly submitted. "If the damage was the result of negligence on part of the plaintiff, he cannot recover; or if it was caused by the mutual fault of both parties, he cannot recover." This was giving the whole case to the jury. It referred the question of fault and negligence to them under the evidence.

A consideration of the whole charge does not sustain the views of the attorney for plaintiff in error, which he draws from extracts and parts of sentences, such as are set forth in 2d, 3d, 4th, and 5th specifications of error.

The sixth and seventh specifications of error refer to the points of the plaintiff in error. They were read by the court below to the jury, and affirmed as abstract principles of law, and are substantially incorporated in the charge of the learned judge. What more could have been asked and desired? To have points read to the jury and affirmed, is certainly an "*explicit answer*," as well as a decided answer. The authorities in Shafer v. Landis,

[Strohl *v.* Levan.]

1 S. & R. 449; Hamilton *v.* Miner, 2 Id. 70; Vincent *v.* Huff, 4 Id. 298; Kline *v.* Johnston, 12 Harris 72; Pennsylvania Railroad Co. *v.* Zebe, 9 Casey 323, are not disputed.

The precise language in the case of Noble *v.* McClintock, 6 W. & S. 62, is "the defendants below were entitled to a *distinct and affirmative answer* from the court, such as could not be misapprehended or. misunderstood by the jury." This was given; the very language of the attorney for plaintiff in error was used and affirmed.

The opinion of the court was delivered, May 6th 1861, by

THOMPSON, J.—The plaintiff in error complains that the learned judge of the Common Pleas gave a binding direction to the jury, that he was liable for damages in the action brought against him by the plaintiff below. If this were true it would be error, as there was some diversity of testimony as to whether the disaster was the result of accident purely, or of carelessness or recklessness. This presented a question for the jury.

Considering the whole charge and answer to the points, we think that portion of it constituting the first assignment of erro., is not obnoxious to the objection interposed. The learned judge said: "The action is trespass, and the suit is well brought in that form. The act was done by the defendant himself, and not by his servant; he was himself sitting upon the wagon, and could have directed the movement of his team."

The defendant rested much on the position that as his servant was driving, the action should have been case, not trespass. This very properly engaged, in the outset of the charge, the attention of the court, and the learned judge being fairly interpreted, in substance, only said that the action was well brought in trespass, for the defendant was *present*, and as the injury resulted from his own team, driven in his presence by his own servant, which he could have controlled, but did not; and therefore, as the judge afterwards put it to the jury, if "the damage was caused by the carelessness or wilful conduct of the defendant," he would be answerable. These instructions were intended to define the law of trespass. Afterwards, it was submitted to the jury to find whether the defendant was liable on the ground of either carelessness or wilfulness of his servant, acting in his presence, and presumed in law to be acting by his commands or assent; or whether it was an accident from inability to control the team. So in another part of the charge, the question of liability under the evidence was left to the jury as follows: "If the damage was the result of negligence on the part of the plaintiff, he cannot recover; or if it was caused by the mutual fault of both parties, he cannot recover." And again, in answer to the defendant's first point, the court affirmed the doctrine asserted,

[Strohl v. Levan.]

that "if injury resulted from the inability of the defendant's servant to control the team," the defendant was not answerable. These instructions left the question of blame or default, and consequent liability, to the jury. The object of the instructions complained of seems to have been as stated, merely illustrations of the propriety of the form of action adopted by the plaintiff, and not intended as operating on the question of the ultimate liability of the defendant.

As to the form of action, a question was made, but we think it is without difficulty. Trespass is proper, where the injury is by the direct act of the party, whether done wilfully or negligently. Force directly applied is the criterion: 4 Whart. 143; 2 Bl. 895; 2 Lord R. 1402; 3 East 598. If the act was in law the act of the defendant, he is consequently liable in trespass, whether it resulted from wilfulness or negligence. That the law will esteem acts of a servant when done in his master's presence and employ, without objection or dissent, as his acts, there can be no doubt. In 1 Chit. Pl. 180, it is laid down that "trespass lies against a master, where, while the servant drives him, the horse of the latter runs away and does damage." In 2 Hilliard on Torts 527, it is said, "A master may be held liable as a trespasser for the act of his servant done in his *presence;*" citing Chandler v. Broughton, 3 Tyrw. 220; McLaughlin v. Pryor, 4 M. & G. 48. Here the son was driving, and the father, the defendant, was riding. The latter made no objection or endeavour to control his son, and if he did not, it was a presumption which a jury might well make, and which I think they were bound to make, that he assented to what was done in the management of the instrument (the team) which did the injury, and therefore per consequence, was answerable, provided the result was not an unavoidable accident, which the jury have found was not the case, the question of negligence or wilfulness having been submitted to them.

Upon consideration of the whole case, we see no sufficient ground for reversing the judgment. A party who acts so uncivilly as to endeavour to keep the road and prevent others with lighter and more active vehicles from passing, or strives to run them off or repass them by unusual and reckless driving, richly deserves to be made to pay all damage incident to such temerity.

Judgment affirmed.