## Feagles v. Sullivan, Guardian

*Herman & Harris*, for plaintiff.
*Swartz, Campbell & Henry*, for defendant.

BROWN, JR., J., February 28, 1938.—Plaintiff sued to recover for personal injuries sustained in a collision between her automobile, which she was driving, and an automobile allegedly being driven for the benefit of defendant and under defendant's control. The jury returned a verdict of $3,000 for plaintiff, and defendant now moves for judgment n. o. v.

On the evening of April 3, 1936, defendant, a minor, took his father's automobile with his father's permission, and went for a pleasure drive. Early in the evening he met a friend, James Hoffner, and the two of them continued the ride. After having driven about for several hours they started to return to Hoffner's home, and while on the way defendant permitted Hoffner to drive in response to his request to do so. Hoffner had been at the wheel for only a few minutes, with defendant seated beside him, when he struck plaintiff's automobile broadside, causing severe personal injuries to plaintiff. There was

ample evidence of negligence on Hoffner's part, and defendant does not question the jury's verdict on that ground. His only contention is that, as a matter of law, he is not liable for that lack of care. The trial judge instructed the jury that defendant "is responsible for the conduct of James Hoffner in the operation of the automobile in which the boys or young men were at the time." It is upon this ruling that defendant bases his motion for judgment n. o. v.

The automobile in question was not owned by defendant. It was owned by his father, and he was only the bailee of it. This is, however, immaterial for "a bailee, or person in possession or control of the conveyance, by whatever name he may be called, is as responsible for the negligence of his driver as if he were the owner": Kelton v. Fifer, 26 Pa. Superior Ct. 603, 605-606.

In the absence of evidence to the contrary, the inference arising from the presence of the owner by the side of another, whom he has permitted to drive, is that the owner has the right to control the operation of the automobile. It is his, and for that reason he necessarily can govern the speed, direction, and the general manner of its operation to such an extent that the driver is acting as his servant. Nor is this inference rebutted by the mere fact that the owner does not exercise his right to control; silence in such a situation indicates only assent to the performance by the driver. "A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven. There is a presumption, not here rebutted, that an owner present in his car has power to control it": Bell v. Jacobs, 261 Pa. 204, 208.

Likewise, in Strohl v. Levan, 39 Pa. 177, it was held that the owner of a team of horses present in the wagon was in control of the driving, and the jury was bound to presume that the owner, who made no objection or en-

deavor to control the driver, assented to what was done in the management of the team. There is no distinction in principle between the driving of a team of horses and the operation of an automobile, "and if the ' owner is present, having, though not actually exercising, the unrestricted right of direction and control, he is liable for its negligent operation": Spegele v. Blumfield, 120 Pa. Superior Ct. 231, 234-235.

An exception to the rule that an owner is presumed to be in control of his automobile when he is present in it is made in the situation where a wife, who owns the automobile, is present while her husband is driving. There the inference that she, as owner, is in control is overweighed by the fact that the husband is, legally and actually, the dominant force in the family. "The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation": Rodgers et ux. v. Saxton, 305 Pa. 479, 485. See also Klein et ux. v. Klein, 311 Pa. 217, 219, Cox et al. v. Roehler et ux., 316 Pa. 417, 419, and Watkins et ux. v. Overland Motor Freight Co., Inc., 325 Pa. 312, 317.

In determining that a new trial had been properly ordered in Spegele v. Blumfield, supra, because of the refusal of the trial judge to instruct the jury that the "negligence of the son, if he was negligent, was the negligence of the father", the court, after first pointing out that a father-son relationship alone does not establish an agency, said (p. 234) : "Under the circumstances of this case where the plaintiff was the owner of the automobile which was being driven with his permission by his son, it must be presumed that the car and the driver were under the control of the owner as fully as if the driver was a paid servant." The legal status of master and servant or principal and agent must, of course, exist. "But this does not imply that the service be rendered under a contract which entitled the driver to compensation, or that

he was in the performance of a customary duty incident to his general employment as the defendant's servant. The person sought to be held responsible must have the right of selecting the person to render the service, but . . . it is not material whether the latter was driving at the request of the owner or person having the right of control of the management of the vehicle, or was a volunteer": McMahen v. White, 30 Pa. Superior Ct. 169, 177-178. It is clear, therefore, that the payment of compensation to the driver by the owner is not the determining factor of the latter's responsibility. This rests upon his presence in the automobile and his having the unrestricted right to control its operation.

Whether the question of contributory negligence of the owner of an automobile as a plaintiff or the question of his negligence as a defendant is being considered, the same test is applicable. The relationship between him and the driver is the same in either situation. "In order that a negligent act or omission of a third person may bar a plaintiff from recovery, the relation between the plaintiff and the third person must usually be such as to make the plaintiff responsible at common law to others who may be harmed by the same or a similar negligent act or omission of such third person": Restatement, Torts, §485, comment (a). Thus, while an owner's contributory negligence as a plaintiff was before the court in Spegele v. Blumfield, supra, and his negligence as a defendant was passed on in Strohl v. Levan, supra, Bell v. Jacobs, supra, Kelton v. Fifer, supra, and McMahen v. White, supra, the same principles governed.

Defendant was the only witness to testify to the facts concerning the purpose of the ride and the circumstances surrounding the change of drivers. After stating that the only object of the drive was pleasure, he testified as follows:

"Q. What are the circumstances under which Mr. Hoffner took the wheel of your car?

"A. Mr. Hoffner asked me how the car ran, and I said all right, and he said, 'Do you mind if I try it?' And I said, 'No.' "

He also testified that they were on their way home, and that during the short time that elapsed between the moment Hoffner started driving and the accident, a matter of about 10 minutes, he had had no occasion to complain to Hoffner about the manner in which he was driving.

It is thus apparent that Hoffner was driving them to their destination as a result of a friendly gesture by defendant to satisfy Hoffner's curiosity about "how the car ran". To hold that the owner of an automobile gives up his right to control the operation of the vehicle, and his responsibility for its operation, under such circumstances as these, would not be sound, for it is just the type of situation in which the driver would feel most obligated to obey the instructions and heed the warnings of the owner. Thus, in McMahen v. White, supra, where the owner of a horse and carriage permitted a friend to drive at the latter's request upon returning from a pleasure trip, the court said (p. 178) : ". . . we are unable to agree that the mere fact that the driver, as well as the owner who is riding in the vehicle, has an interest personal to himself in reaching the destination will relieve the owner from responsibility to third persons." The inference that defendant was in control of the automobile was not rebutted by his own uncontradicted testimony, and so he is responsible for its negligent operation if not relieved by reason of his being a minor.

There is authority for the contention that the appointment of a servant or agent by an infant, unlike other agreements made by an infant, is completely void, and that therefore no liability, not even for the alleged servant's negligence, can be predicated upon that agreement. See annotation, 103 A. L. R. 487. For example, in Hodge v. Feiner, 338 Mo. 268, 90 S. W. (2d.) 90, defendant, a

minor, had borrowed his father's automobile, and a friend of defendant's whom he had permitted to drive negligently injured plaintiff. In absolving defendant of all liability, the court said: " 'It has been held repeatedly that an infant cannot appoint an agent, and that such act is absolutely void and cannot be ratified by him. . . . It therefore follows that though an infant may be liable for his own torts, yet since he cannot appoint an agent, he cannot become liable for torts committed by a servant in the course of his employment.' " See also Wilcox v. Wunderlich et al., 73 Utah 1, 272 Pac. 207.

It is apparent that the strength of this view lies in the premise that the appointment of an agent by an infant is a void act, and not merely a voidable one. Hence, in a jurisdiction where the creation of an agency by an infant has the same legal effect as his other agreements, he is liable for the torts of his agent just as he is liable for his own torts. Thus, in Scott v. Schisler et al., 107 N. J. L. 397, where a minor, who had possession of his father's automobile, permitted a friend to drive while they were returning from a football game, the court, in holding the minor liable for his friend's negligence, said (p. 399) : "In 1 *Williston on Contracts* 444, the rule is stated that 'the creation of an agent by an infant is not void *ab initio,* but voidable at his option.' We consider this a correct statement of the law. So long as the infant sees fit to continue the existence of the agency, he is answerable for the negligence of his representative in the performance of the duty which the agency carries with it." Likewise Labatt in his work on Master & Servant, vol. 1, p. 380, after first coming to the conclusion that an infant's appointment of an agent is only voidable, and not void, says: "It is submitted that the liability of an infant for a tort must be determined with reference to the situation existing at the time when the tort was committed, and that, if the contractual relationship between him and his servant was allowed by him to continue up

to that time, he cannot relieve himself from responsibility for the servant's act by a subsequent repudiation of the contract."

In Pennsylvania, with the exception of a warrant of attorney to confess judgment given by a minor (which has been held to be absolutely void: Knox v. Flack, 22 Pa. 337), the contracts of a minor are not void, but merely voidable. Thus, a deed executed by a minor is voidable, and his right to disaffirm or avoid it must be exercised by him within a reasonable time after he becomes of age: Logan v. Gardner et al., 136 Pa. 588; Dolph v. Hand et al., Execs., 156 Pa. 91. In Weirmuller v. Stone et al., 3 D. & C. 165, it was held that an infant, on coming of age, could ratify a contract of agency. And in Elm City Lumber Co. v. Haupt, 50 Pa. Superior Ct. 489, a partnership contract between a minor and adults was treated as voidable by the minor rather than void, and his interest in the firm property was held to be subject to the rights of the partnership's creditors. "In short the modern doctrine is to the effect that, except as to a narrowly limited class of contracts which are valid and binding upon him, an infant's contracts are voidable, but not void": 14 R. C. L. 223, §10.

Just as the actual agency agreement may be repudiated by the minor without any liability, so may any contracts made for him by the agent. The reason for this is that the agent's acts are the acts of the minor and have the same legal effect. It follows, therefore, that the minor cannot escape liability for the agent's negligence since he cannot escape liability for his own. If this conclusion were not so, an infant could have the benefit of an agent's services to do exactly what the infant himself could do, and yet at the same time the infant would escape the only liability the law would have imposed on him if he had acted himself, and acted negligently.

This view is in accord with the modern trend. For example, it was originally the law in New York that the

appointment of an agent by a minor was absolutely void, and that consequently the minor was not liable for his "agent's" negligence: Robbins et al. v. Mount et al., 4 Robt. 553 (N. Y.). However, in Casey v. Kastel et al., 237 N. Y. 305, that doctrine was definitely repudiated, and in Taksen v. Kramer, 239 App. Div. 756, it was held that a complaint was sufficient which alleged that the automobile which struck and injured plaintiff was being operated by the driver under the control and in the presence of defendant, even though it also alleged that defendant was a minor. See also Restatement, Agency, §20, comment (c); Blomquist et al. v. Jennings et al., 119 Ore. 691, 697.

Furthermore, many of those jurisdictions which retain the rule that an infant cannot have an agent hold an infant owner liable for the negligence of the driver when the infant is present in the automobile. This is done, not on the basis of respondeat superior, but on the ground that, since the minor is present and, being present, has such a high degree of control over the driver, the negligence of the driver is legally the negligence of the minor. See Potter v. Florida Motor Lines, Inc., 57 F. (2d) 313, 317, Thixton v. Palmer, etc., 210 Ky. 838, McKerall et al. v. St. Louis-San Francisco Ry. Co. (Mo. App.), 257 S. W. 166, and Wilson et al. v. Mullen et al., 11 Tenn. App. 319. The theory upon which those decisions are based is a part of the law of Pennsylvania. "Where the owner of a vehicle is sitting by the side of his servant, the act of the servant in driving is the act of the master, and the trespass of the servant is the trespass of the master. The reason is that the master is in immediate control over the servant. . . . The defendant was riding in his automobile, which was driven by his servant. A presumption of law, therefore, arose in the absence of evidence to rebut it, that the act of the servant was the act of the defendant": Lassock v. Bileski, 94 Pa. Superior Ct. 299, 302. See also Strohl v. Levan, supra, and Spegele v. Blumfield, supra. Accordingly, under this view defendant is liable,

not for Hoffner's negligence, but for what amounts to his own negligence in the eyes of the law, and so his infancy cannot excuse him from such responsibility.

The testimony bearing upon Hoffner's operation of the automobile not being disputed, the trial judge "was right in treating the question of the defendant's responsibility for the conduct of the driver of his vehicle as one of law": McMahen v. White, supra, pp. 176, 177.

Being of the opinion, therefore, that defendant had such control of the automobile that Hoffner was acting as his servant, and also that Hoffner's negligence was his negligence, defendant, though a minor, is responsible for the injuries sustained by plaintiff.

Defendant's motion for judgment n. o. v. is accordingly dismissed.