## JOHN FICKEN *v.* FREDERICK S. JONES AND G. P. SWIFT.

LIABILITY FOR INJURIES TO A PERSON DONE BY CATTLE.—The law governing the liability of persons driving cattle through the streets of a city, for damages caused by the cattle injuring a person lawfully in the street, without any fault on his part, is the same as that by which carriers of passengers are governed.

ACTION FOR DAMAGE DONE TO THE PERSON BY CATTLE.—In an action to recover damages for injuries to the person, done by cattle of defendant while being driven through a city, when the plaintiff has proved that he sustained the injury without fault on his part, he has made a case of *prima facie* negligence, and the burden is cast on the defendant of showing that he was not at fault.

SAME.—In such case, when the cattle were driven by persons employed by the owner, the owner is entitled to show in defense that the persons employed by him were persons of competent skill in the business.

PLAINTIFF recovered judgment in the Twelfth District Court, and defendants appealed.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace, & Stow*, for Appellants.

*Baxendin* v. *Sharp*, 2 Salkeld's Reports, is as follows: "The plaintiff declared that the defendant kept a bull that used to run at men, but did not say *sciens* or *scienter*. This was held naught after verdict, for the action lies not unless the master knows of this quality, and we cannot intend it was proved at the trial, for the plaintiff need not prove more than is in his declaration." (1 Lord Raym. 109; 2 Ib. 1,583; *Hinckley* v. *Emerson*, 4 Cowen, 351.)

*Brock* v. *Copeland*, 1 Espinasse's Reps. 203, was an action on the case to recover damages for an injury received from

defendant's dog. The declaration alleged that the defendant knowingly kept a dog used to bite. The plaintiff failed under the circumstances of that case; but in that case Lord Kenyon said, "that the injury which this action was calculated to redress was where an animal *known to be mischievous* was permitted to go at large," etc.

In *Vrooman* v. *Sawyer*, 13 John. 339, the Supreme Court of New York said: * * * "the owner is not liable to action on the ground of negligence, without proof that *he knew that the animal was accustomed to do mischief.*" In *Lyke* v. *Van Leuven*, 4 Denio R. 128, the Court say: "The *scienter* is the gist of the action in these cases, and the principle applies to swine as it does to other animals which are *mansuetæ naturæ.*"

This case went to the Court of Appeals, (1 Comstock's Rep. 515,) and the Court there say: "It is a well settled principle that in all cases where an action of trespass or case is brought for mischief done to the person or personal property of another by animals *mansuetæ naturæ*, such as horses, oxen, cows, sheep, swine, and the like, the owner must be shown to have had notice of their viciousness before he can be charged, because such animals are not by nature fierce or dangerous, and such notice must be alleged in the declaration; but as to animals *feræ naturæ*, such as lions, tigers, and the like, the person who keeps them is liable for any damage they may do, *without notice*, on the ground that by nature such animals are *fierce* and *dangerous.*" The Court then cites a number of authorities sustaining this view, and adds: "But this rule does not apply where the mischief is done by such animals while committing a trespass upon the *close* of another."

In *Steele* v. *Smith*, 3 E. D. Smith's Rep. 322, there was some evidence to show that the defendant's servant had set his dog on the plaintiff's cattle. The Court, after observing that if it was the wilful act of the servant the master would not be liable, says: "It was not the act of the dog alone, *and if it had been, the defendant was not liable without evidence that the dog had done the like mischief before, and that the defendant knew it.*"

In *Coggswell* v. *Baldwin,* 15 Vermont Rep. 412, the law is admitted by Court and counsel to be in accordance with the foregoing authorities. In *Deane* v. *Clayton*, 7 Taunton's Rep. 491: " Case against the owner of an ox, which was driven from Essex to London for sale ; it was tranquil when it left home, but being fevered by the journey, it gored the plaintiff in Whitechapel, and held, the action *lay not.*" That is precisely the case shown in the record here.

Defendant Smith was *sought* to be charged as employer of defendant Jones, and was sought to be held liable for the negligence of his supposed employé, Jones. It is reasonable that a party who is sued in effect for employing a negligent agent or servant may be allowed to prove if he can that the person selected by him to act for him was in fact a safe and prudent man. What employer can do more than select such a man ?

*Shafters & Goold*, for Respondent.

Upon the first proposition contained in the argument for appellant, we may well admit the position in the abstract to be true, and the authorities cited to sustain it as sound law, but we insist that neither one nor the other is necessary to be considered for the purposes of this case.

It is true that in the complaint we allege the ferocity of the animal and the *scienter* of the defendants ; and if we had rested on this ground alone, the position of the defense would be unanswerable, and we should acknowledge our failure. But it is not the fact that we relied singly upon that cause of grievance. The complaint in addition to that avers the negligence of the defendants in driving and handling the animal, and that averment is denied by the answer, and an issue distinctly formed upon it and submitted to the jury under proper instructions from the Court.

This issue, involving the charge of want of proper care and diligence, was in no sense abstract, remote, or foreign to the facts eliminated in the course of the trial ; it was in every sense proper and legitimate. It seems undeniable that prior to the

accident the ox had become unruly and unmanageable, to such an extent as to require the defendants to tie him up. Now, even if we admit the previous good character of the animal, and attribute his then ferocity to some temporary cause, such as being fevered and overheated, yet it is clear that the defendants had notice of his change of temper, and saw that he was in a condition to be dangerous.

It is proper, also, to refer to the fact that the animal was fevered and overheated, and it might well be presumed that this arose from negligent and unskilful driving. When it is taken into consideration that the ox had just arrived from a cool voyage over the waters, and the shortness of the distance he had been driven, and that the theory of the defense is that he was not of a ferocious temper, but was only overheated, it is difficult to reach any other conclusion than that his ill favored condition was produced by reckless and negligent handling.

These were facts which had to be left to the jury, and if they found the defendants guilty of negligence, then that becomes our distinct ground of recovery, and the question as to whether the beast was ferocious, and the *scienter* of the defendants, has no connection with the issue. That was at first, upon the pleadings, an issue, but it became an abandoned issue by the force of circumstances, and we recovered upon the other issue—the one involving the question of negligence.

The cases in which similar issues have arisen are frequent and familiar, and date from the earliest history of the law.

Where a carman ran over a boy in the streets and maimed him by negligence of driving his horse. (1 Raym. 379,)

Where a servant is guilty of misconduct in driving his master's horses. (*Joel v. Morrison*, 6 C. & P. 501.)

Where the defendants brought a coach with two ungovernable horses to Lincoln's Inn Fields, there drove them to make them tractable, and the horses, because of their ferocity, ran upon the plaintiff and wounded him. The defendants, master and servant, were found guilty. It was moved in arrest of judgment that no *sciens* was laid of the horses being unruly, nor any negligence alleged. Yet judgment was given for the

plaintiff on the ground of the inappropriateness of the place. (*Michael* v. *Alestree*, 2 Leving, 172.)

This last case demonstrates that in cases of injury from animals, the right of recovery does not rest solely upon the owner's knowledge of the beast's ferocity, but that the right to recover exists where there is no *scienter*, and, indeed, where there is no ferocity of temper; and that this right may be enforced, not only where the injury arises from negligence, but even where there is no negligence, if the animal is taken by his owner to an improper place.

The second error complained of by the appellant is the refusal of the Court to permit a witness to be asked " Do you know whether he (meaning defendant Jones) is a safe and prudent man in that business?" (meaning the business of driving cattle.) The question was properly excluded. The character or capacity of Jones was not in issue, and could not affect the issue. The question was as to his negligence at the particular point of time when the injury was done. If his character was ever so good for safety and prudence, it could not excuse or palliate the one act of neglect; it could not even be used in mitigation of damages. It might as well be said that a man's good character for prompt payment ought to release him from a debt or reduce the recovery. Swift was not sued for employing a negligent agent or servant; no such allegation is made or attempted to be proved. He is sued simply for the negligence on one occasion of his servant; and whether that servant was on all other occasions skilful and prudent, or the reverse, is foreign to the issue.

By the Court, CURREY, J.

Action to recover damages for injuries which the plaintiff received from a steer belonging to the defendant Swift, while in the charge of the defendant Jones. While driving the steer through Brannan street, near Sixth street, in San Francisco, he became affrighted, and afterwards separated from the herd of cattle to which he belonged. In the effort to capture him

he became wild and apparently alarmed, and escaped for a time from his keepers, and while at large he ran against the plaintiff, knocking him down and goring him in a terrible manner.  The plaintiff charged in his complaint that the cattle constituting the herd, which consisted of nineteen head, and particularly the steer in question, were wild, untamed and dangerous, of which the defendants had notice.  The plaintiff also averred that the cattle composing the herd were negligently driven by the defendants along certain streets named, without any precautions to restrain or prevent them from attacking and goring people passing along the streets, and that while the plaintiff was lawfully passing along the street between Harrison and Folsom streets, the steer escaped from the herd, and of his " own vicious instincts then and there attacked, threw down and gored the plaintiff," describing the injuries done, and alleging that the same were not the result of a want of ordinary care and prudence on the part of the plaintiff, but the result of the defendants' wrongs and negligence.  These allegations of the plaintiff the defendants controverted.

There was no evidence on the trial showing that the cattle were wild, untamed or vicious, nor that the defendants had cause to believe they were so.  The question at issue became narrowed down to the point whether Jones, who had charge of the cattle, and the persons assisting him, were guilty of negligence and want of due care in driving the cattle from the place where they were landed to the slaughter house at the outskirts of the city, and also in their endeavor to capture the steer after he became separated from the herd.  Whether the defendants were negligent and careless in the conduct and management of the business in which they were so engaged, was a question in issue, concerning which the parties respectively produced witnesses, who detailed circumstances connected with the matter as they saw and understood them.

To overcome and avoid, in some degree, at least, the force of the evidence on the plaintiff's behalf, the defendants proposed to prove by a witness on the stand that Jones was a safe

and prudent man in the business of driving and conducting cattle through the city; and this evidence was urged especially on behalf of Swift, as competent and material in his defense, as he was sought to be charged for the alleged negligence and carelessness of his subordinate, Jones; but the Court excluded it on the plaintiffs' objection that it was incompetent and irrelevant. The point is made on appeal from the judgment, which passed against the defendants jointly, that this ruling of the Court was erroneous.

In argument, the plaintiff's counsel admit that the allegation of the complaint of the ferocious and vicious disposition of the animal, and of consequence any *scienter* of the defendants of such fact was not sustained; but they say the plaintiff's grievance is attributable to the negligence of the defendants in driving and handling the animal, upon which fact an issue was distinctly formed and submitted to the jury; and it is argued that if the steer was docile and tractable previous to his separation from the herd, but then, from some temporary cause, became wild and ferocious, the defendants thereupon had notice of the change in his temper, and should have confined him by means which would have effectually prevented his escaping; that the facts show that though the method for securing the beast by tying him to the fence by the side of Brannan street was the proper one, if it had been well done, yet it was so carelessly and ineffectually done as to allow the steer to effect his escape. That, assuming the animal to have been overheated and feverish, it might be presumed this arose from negligent and unskilful driving before he became separated from the herd. These were facts, counsel say, which had to be left to the jury, and if they found the defendants guilty of negligence then that became a distinct ground of recovery, and the question as to whether the beast was ferocious and the defendants aware of it, had no connection with the issue. That was, at first, upon the pleadings, an issue, but it became an abandoned issue by the force of circumstances, and the plaintiff recovered upon the other issue—the one involving the question of negligence.

We have thus referred to the argument for the respondent in order that the question before the jury and which they were required to pass upon, may be exhibited in the nude aspect in which it was finally submitted.

It is a matter of importance to understand what is the rule in respect to the degree of care and diligence which parties engaged in driving cattle, reared in the rural portions of the country, through the streets of a populous town or city must observe and exercise, in order to prevent the happening of injuries to those lawfully in such streets, and necessarily exposed to dangers which they may not have the power to avert, and from which there may be no way of escape. It is impossible for a person acquainted with the disposition of cattle raised upon farms or in the open country, notwithstanding they may be what are commonly known as tame cattle, to be oblivious to the fact, that when brought into and conducted through the highways of a city, they are apt to become alarmed and excited by the presence of many people and at the sight of new and strange objects, and by the noise and confusion around them on every side. From such exposure cattle often become wild and difficult of management, and not unfrequently some of them become fierce from fright, if not so before then, and dangerous to people who may not be aware of their presence.

In all cases where, by the conducting of any lawful business, the lives and limbs of human beings are placed in peril, the law requires of the proprietors and managers of that business the utmost care and diligence. The driving of cattle through the streets of a city is attended with danger to persons who are of right there, and who can justly demand that the care, diligence and skill essential to their safety shall be commensurate with the necessities of the case. It is not impossible that injuries may happen in such cases, even though the utmost care and skill which the law exacts of the managers of such business may have been exercised; and before a person can be condemned in damages by the verdict of a jury

the party complaining of an injury resulting from negligence or want of skill in the conduct of that business must establish facts constituting a basis from which the fact in issue may be found. In the case under consideration the ultimate fact to be found was whether the defendants were guilty of negligence and want of due care, as in substance charged in the complaint. The burden was on the plaintiff to prove, in the first place, that he received the injury for which he sought redress, and that such injury was done by the animal of the defendants described in the complaint, within the City of San Francisco, and that it happened without fault on his part. These facts proved, afforded *prima facie* evidence of negligence on the part of the defendants, and then the burden of proof became cast on them to show that the injury did not occur by reason of any default on their part. How was it competent for the defendants to show this in exoneration of themselves of all liability whatever, or by way of reducing the damages? This might have been done by showing that the defendant who had the business in charge at the time performed his duty with proper care and skill; and tending to this end it was admissible to show that he was a person of experience in the business, and had therein proved himself to be prudent, careful and of competent skill, and in every respect qualified for the duties which he undertook to perform. The proof of this, standing alone, might not have been of much force, but as connected with the facts and circumstances that transpired in driving the cattle through the city, and in the endeavor to capture the steer after his separation from the herd, it might properly have had some weight. As it was incumbent on the defendants, in order to overcome the *prima facie* case made out against them, to establish that the injury to the plaintiff did not result from want of due care and skill on their part, they should have been permitted to have shown, in the first place, the important fact that Jones was competent, careful and skilful in the conduct and management of that kind of business. It was competent to make such proof because the law exacts of those engaged in the business of driving such

cattle through a city, by which lives and limbs of people are imperilled, the utmost care and circumspection. If it had been proved that Jones possessed the qualities requisite for the business in which he was employed, then it would to that extent have appeared that the defendants exercised due care, though that alone might not have amounted to enough to have exonerated the defendants from all liability. Whether Jones' assistants was also competent and skilful and of a number reasonably sufficient, under all the circumstances, it may be, might have been a proper subject of inquiry. In addition to these matters the defendants would undoubtedly have been required to show what was done in the effort to recapture the animal, and if it had appeared that those engaged in the business were persons of competent skill, care and diligence, the jury, in the first place, would have been apt to have regarded their efforts as comporting with their established character and capacity in the management of such business; and as accidents sometimes happen, notwithstanding the utmost care and diligence may be exercised to prevent them, and damage results from causes which human care and foresight cannot avert, it is not impossible that the jury might have come to the conclusion that the defendants were not at fault in this instance, and therefore not liable in damages to the plaintiff.

The rule of law governing in the case under consideration rests for its foundation in the same principle as that by which the duties and liabilities of the carriers of passengers are governed. In the one case the proprietor of the business must exercise the care, circumspection and skill which is characteristic of cautious persons where the lives and limbs of human beings are liable to injury from exposure to the fury of excited cattle; and in the other the carrier is to convey his passenger safely and securely; and because of the value of human life and limbs, the law requires the utmost degree of care and skill in the preparation and management of the means of conveyance, and will hold the proprietor liable for the slightest negligence. If the passenger sustains injury without fault on his part, by the oversetting of a stage coach, or from a railroad

disaster, or the like, such accidents are, in the first place, attributed to the default of the proprietor, and are *prima facie* evidence of negligence on his part. (*Boyce* v. *California Stage Company*, 25 Cal. 467; *McKinney* v. *Niel*, 1 McLean, 540; *Stokes* v. *Saltonstall*, 13 Peters, 181; *Ware* v. *Gay*, 11 Pick. 106; *Ingalls* v. *Bills*, 9 Met. 6; *Carpue* v. *London and Brighton Railway Company*, 5 Adol. and Ellis, 747; Aug. on Com. Carriers, Chap. 11.) In such case it is well settled to be competent for and incumbent on the defendant to show that those in charge of and conducting the business, were persons of good and careful habits and competent skill, and also whatever else is necessary to establish the fact of the utmost care and prudence on the defendants' part. The defendants in this case being required by the law to observe and exercise the greatest care and prudence, and reasonable skill, from the beginning throughout in a business which was attended with danger to the people lawfully in the streets of the city, ought to have been permitted to make the proof proposed.

Judgment reversed and a new trial ordered.

SANDERSON, C. J., concurring specially.

I concur in the judgment.

Mr. Justice SHAFTER, having been of counsel, did not participate in the decision of this case.

Mr. Justice SAWYER expressed no opinion.