77  238
134  408
77  238
30 SC 176
30 SC 177

## Hays *et al. versus* Millar *et al.*

1. The owners of a tow-boat are not common carriers; in an action by them for towing barges, where, under a plea of set-off and payment, the defendant alleged that the tow was lost by the negligence of the owners of the boat, the burden was on him to show such negligence.

2. A common carrier is an insurer against all losses that do not arise from the act of God or the public enemy, and the burden is on him to bring himself within the exceptions.

3. The defendant having given evidence tending to show that the loss was from the negligence of the plaintiff's pilot and engineer, evidence that those officers were competent, skilful and careful, was inadmissible.

4. A master is responsible for the negligence of his servants in the course of their employment, without regard to their character for care or skill: except in the case of fellow-servants, or of a servant employed by him in some independent work.

5. When an act or omission of defendant is proved, whether it be actionable negligence, is to be determined by the character of the act or omission, not by the defendant's character for care and caution.

November 8th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* Of October and November Term 1869, No. 67.

This was an action brought to July Term 1868, of the court below, by Alexander Millar and others, partners as A. Millar & Co., against Henry B. Hays and others, partners as the " Hays Coal Company." The action was to recover compensation for towing coal barges of defendants from Pittsburg to Louisville, by the tow-boat " Dart," belonging to plaintiffs. The defendants pleaded " Non assumpsit, set-off and payment with leave," &c.

Whilst proceeding on the voyage with six coal barges of the defendants, the " Dart" ran into some barges which were moored on the shore of the Ohio, by which three of defendants' barges were wrecked and sunk; the other three barges were delivered at Louisville.

At the time of the collision, William Brown was the pilot and John Shades was engineer of the " Dart."

In answer to the plaintiffs' claim, the defendants gave evidence tending to show that the three barges were wrecked and lost by the carelessness and negligence of the officers and crew of the " Dart."

In rebuttal, the plaintiffs offered to show by witnesses on the stand, that Brown was a competent, skilful and careful pilot; and that Shades was a competent, skilful and careful engineer.

These offers were objected by the defendants, admitted by the court (Hampton, P. J.), and several bills of exceptions sealed.

The witnesses testified that Brown was " a good, careful competent and sober pilot," and that Shades was " an *A* No. 1 engineer."

[Hays v. Millar.]

The verdict was for the plaintiffs for $824.21.

The defendants took a writ of error, and assigned for error the admission of the evidence objected to.

*M. W. Acheson*, for plaintiffs in error, cited 1 Greenl. on Ev., § 54; Anderson v. Long, 10 S. & R. 55; Mertz v. Detweiler, 8 W. & S. 376.

*R. Woods*, for defendants in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 3d 1870.

The plaintiffs in the court below were the owners of a steam tow-boat called the "Dart," and they brought this action to recover the amount due to them for towing three barges laden with coal, from Pittsburg to Louisville, down the Ohio river. Their demand was not controverted, but the defendants, under the pleas of set-off and payment, made a counter-claim on the plaintiffs for damages alleged to have been suffered by them from the loss of three other coal barges, which the plaintiffs had undertaken to tow at the same time, and which were wrecked and sunk by the negligence of the plaintiffs or their servants. The defendants thus became actors, and, as the owners of a tow-boat, as has been held by this court in Leonard v. Hendrickson, 6 Harris 40, and Brown v. Clegg, 13 P. F. Smith 51, are not common carriers, the *onus* was upon them to show affirmatively negligence. It is important to bear this in mind. A common carrier is an insurer against all losses, except such as arise from the act of God or the public enemies, and in case of a loss it is incumbent upon him to bring himself within the exception. The defendants below did give evidence of the circumstances of the occurrence, which was a collision with another tow, from which the loss resulted, and by which, as is contended, negligence or want of skill of the servants in charge of the "Dart" was to be inferred. To rebut this with other evidence, the plaintiffs offered to show that their servants—the pilot and engineer—were competent, skilful and careful officers. This was objected to by the defendants, but admitted by the court, and the admissibility of this evidence is the only question presented by the assignments of error.

It is to be remarked, so as not to confound matters which are distinct, that the evidence offered was not as to the reputation of these men, but by experts well acquainted with them and competent to form a judgment of their qualifications, that in point of fact they were competent, skilful and careful. This is putting the point in its strongest possible aspect for the plaintiffs below; for clearly on no principle would their reputation for skill and competency have been admissible as relevant to the issue

[Hays *v.* Millar.]

under trial. Had the defendants given evidence, as it would seem they might have done, of the incompetency of the persons for the duties assigned them, although that of itself would not have been a ground of recovery, unless it was shown that the loss was the result of their want of fitness, it might of course have been rebutted by the evidence admitted below. In Hart *v.* Allen, 2 Watts 114, which was the case of a common carrier, evidence was received, in the first instance, on the part of the carrier, that the captain was a man of experience, and this was met by evidence on the other side—all this without objection; but being a common carrier, he was responsible for all losses except such as were caused by the act of Providence or the common enemy. That case established, however, that in the contract of carriage by water there was no warranty of seaworthiness, as in a policy of insurance; that to entitle the carrier to recover his freight, he need not prove that the master and crew were competent and sufficient, but that he was responsible only if their unfitness or insufficiency contributed to produce the injury. Hence, whatever may be the rule in the case of a common carrier of goods or persons, with which we are not at present dealing, in whose case a loss throws upon him primâ facie liability, the rule may and ought to be different in the case of an ordinary carrier for hire, which the owner of 'a tow-boat is. He is, like other bailees of the same class, only "bound to use such a reasonable degree of care and attention that the owner of the boat or raft towed shall incur no damage or loss through the negligence or default of the owner of such steamboat or his servants:" 6 Harris 44. The *onus probandi* is therefore on the owners of the raft or barge towed to prove affirmatively that the loss was occasioned by the want of skill or negligence of the owner of the tow or his servants placed by him in charge of it. That may be shown from the unskilfulness or negligence of those employed, resulting in a loss in the particular instance. When evidence of the circumstances of the loss fails, or it is rendered doubtful how the loss occurred, such unfitness, when established, may be sufficient to shift the *onus probandi* from the bailor to the bailee. In The Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 339, which was the case of an injury to a passenger in one train, occasioned, as was alleged, by the negligence of the conductor of another train with which it had come in collision, we held that it was competent to show that such conductor was a man of intemperate habits, and that it raised the presumption of negligence as the cause of the injury. It will be observed that that case was rested, not on the ground of the liability of the company as common carriers of a passenger, but as masters for the negligence of a servant, when it was once established that the injury did not result from any negligence in the officers of the train in which the plaintiff was riding. There certainly are cases,

[Hays *v.* Millar.]

however, in which it will be a defence, in an action against a person for damages resulting from the negligence of his servants, to show that he exercised all possible care in their selection : as where he is sued by one servant for the negligence of a fellow-servant, or where it is sought to make him liable for the acts or omissions or want of skill of one-employed by him in some independent work. These are exceptional cases. A man is responsible for the consequences of the negligence of his servants in the course of their employment, without any regard to their character for care or skill. The owner of a raft is liable for any damage which may be done to the property of others upon the river, occasioned by negligence or unskilful management of his pilot, although he had employed men who were reputed to be skilful watermen : Shaw *v.* Reed, 9 W. & S. 72. In Tenney *v.* Tuttle, 1 Allen 185, an action against a man for negligence in leaving a horse and carriage in the street unfastened, evidence of his general carefulness and prudence was ruled to be inadmissible. It was laid down that when the precise act or omission of a defendant is proved, the question whether it is actionable negligence is to be decided by the character of that act or omission, and not by the character for care and caution which the defendant may sustain. In our own case of Mertz *v.* Detweiler, 8 W. & S. 376, a physician, sued for malpractice, was not allowed to show by an admitted expert his skill as a surgeon. The testimony as to his general skill was declared to be clearly irrelevant. "It was not that," say the court, "but his treatment of the particular case, with which the jury had to do. If the latter was notoriously bad, of what account would be his abstract science or treatment of other cases ? It may be said that his general qualifications might serve to shed light on the propriety of his practice in this particular instance; but it is light which would be less likely to lead to a sound conclusion than to lead astray." This is an authority in point : for navigating the tow by servants, the bailees are certainly in no better position than if they had navigated it in person, and had asked to be permitted to show their own general skill and competency. The negligence of the servant of a bailee to carry is his own negligence. *Qui facit per alium facit per se.* In Lightner *v.* Sargent, 1 Fost. 460, also an action against a physician for malpractice, in which such evidence was held to be admissible, it was put expressly on the ground that the declaration alleged that the injury resulted from want of skill in the defendant. In Ficken *v.* Jones, 28 Cal. 626, the evidence was held to be admissible, as tending to throw light upon the question whether there was skill and care in the particular instance, but the learned judge who delivered the opinion in that case, admitted that, standing alone, it would not have much force. It is very important that the prin-

27 P. F. SMITH—16

[Hays *v.* Millar.]

ciple of *respondeat superior* should be upheld and maintained for the sake of the general security of society, yet it is often attended with much seeming hardship. To visit a man with heavy damages for the negligence of a servant, when he is able to show that he exercised all possible care and precaution in the selection of him, is apt to strike the common mind as unjust. Hence, unless a party claiming to recover for a loss arising from the acts or omissions of the servant chooses himself to make his incompetency one of his grounds of recovery, there is very great danger that a jury will be misled by such evidence from the true point of the controversy and give entirely too much weight to the evidence of character. They will not confine it to its true bearing upon the fact of negligence in the particular case, but set it up as *per se* a justification of the master. We think, therefore, that the evidence in this case was erroneously admitted.

Judgment reversed, and a *venire facias de novo* awarded.