# Esher v. Mineral Railroad & Mining Company, Appellant (No. 1).

*Negligence—Evidence—Inference from facts—Degree of care.*

Where the facts are disputed, where there is any reasonable doubt as to the inference to be drawn from them, or when the measure of duty is ordinary and reasonable care and the degree varies according to the circumstances, the question cannot in the nature of the case be considered by the court; it must be submitted to the jury.

It is only where the facts and inferences therefrom are undisputed and where the precise measure of duty is determinate that the question is for the court.

*Negligence—Master and servant—Assumption of risk—Instruments and appliances.*

An employee will be deemed to have assumed the risk naturally and reasonably incident to his employment, and will be presumed to have notice of the risks which are or should be obvious to one of his understanding and experience, but the employer must maintain instruments and appliances reasonably suitable to the prosecution of his business and which enable his employees to perform their duties with relative safety without exposure to risks which are not naturally or reasonably incident to the employment.

The employee has the right to assume that the employer has provided reasonably safe machinery and appliances for his use, and he does not assume the risk growing out of their defective character unless he has been fully advised that they are defective.

In an action against a mining company to recover damages for the death of a boy kicked by a mule, the case is for the jury and a verdict and judgment for plaintiff will be sustained where the evidence is conflicting as to whether the boy at the time of the accident was performing an act outside of the scope of his employment at the request of a fellow servant, whose negligence was alleged to have caused the accident, and as to whether the vicious character of the mule was known to the deceased and notwithstanding such knowledge he remained in the employ of the defendant.

388 ESHER v. R. R. & MINING CO., Appellant (NO. 1).

Statement of Facts—Opinion of the Court. [28 Pa. Superior Ct.

Argued Oct. 27, 1904. Appeal, No. 169, Oct. T., 1904, by defendant, from judgment of C. P. Northumberland Co., Feb. Term, 1903, No. 201, on verdict for plaintiff in case of John J. Esher and Margaret E. Esher v. Mineral Railroad & Mining Company. Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's minor son. Before AUTEN, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiffs for $717. Defendant appealed.

*Errors assigned* were various instructions and particularly refusal of binding instructions for defendant.

*S. P. Wolverton*, for appellant.

*J. W. Gillespie*, with him *J. Mal. Gillespie*, for appellee.

OPINION BY HENDERSON, J., July 13, 1905:

The plaintiffs' son was killed in the mine of the defendant company. The evidence tends to show that his death resulted from the kick of a mule which had been used in the mine for a considerable time. It was alleged in the declaration that the mule was vicious and disposed to kick, and that this disposition was known by the defendant; that the plaintiffs' son was at work in his proper capacity, and that the defendant in the respect complained of neglected to provide him with safe appliances in the prosecution of his work, as the result of which he lost his life. Two objections are made to the judgment: First, that the plaintiffs' son was killed while performing an act outside of the scope of his employment at the request of a fellow-servant, and that the negligence of the latter was the proximate cause of his death. Second, that the vicious character of the mule was known to the plaintiffs' son; that he remained in the employment of the defendant after such knowledge, and, therefore, assumed the risk of his employment.

The evidence is somewhat conflicting in regard to the duties of the boy. He was described on the pay rolls of the company as a door boy, and was employed with two other boys to open

and close doors connected with the ventilating system of the mine for the passage of trains of cars conveying coal.   The defendant contends that this was his only duty, and that at the time of the accident he was away from his post and assisting the driver of one of the teams of mules, an act forbidden by his instructions.   Some of the evidence, however, is to the effect that in addition to the work of opening and closing doors, it was the duty of the door boys to go to the turn-out with the trains of coal and to assist the drivers in getting "the trips" out.   It was at the turn-out that the boy was injured, and there can be no doubt that there is evidence that his presence there was consistent with his duty.   The evidence is clear that the boys made several trips a day to the turn-out, and that this had been the practice in that tunnel for a long time with the knowledge of those having immediate control of the work in that part of the mine.   A servant's duties are to be defined by what he actually did with the knowledge and approval of his employer rather than by a verbal designation of his position: Rummell v. Dilworth, 111 Pa. 343.

The defendant's allegation is that the accident occurred while the plaintiffs' son was attempting to unhitch the spreader from a loaded car to which it was hooked, at the request of the driver of the team, and there is evidence that the driver made such a request, but the evidence does not show that the boy complied, or that he was injured in making such an attempt. Edward Ridiger, the only witness beside John Harris, the driver, who was present gives this account of what occurred :

" Q.  Were you close to the turn-out on the day that Howard Esher was injured?   A.  Yes, sir, I was.   Q.  Did you see the mule kick?     A.  I seen the mule kick, yes, sir.   Q.  Which mule was it that kicked at that time ?   A.  The one next to the but mule."

\*       \*       \*       \*       \*       \*       \*       \*

" Q.  You were at the turn-out or near the turn-out at the time Howard Esher was kicked by the mule?   A.  Yes.   Q.  You saw the attempt of John Harris to make what is called a flying hitch to the empties, did you not?   A.  Yes.   Q.  Then he missed, did he not?   A.  Yes.   Q.  And the mules went on ? A.  Yes.   Q.  Did he call on them to stop?   A.  He did.   Q.  Did they stop?   A.  No, sir.   Q.  What did Harris do ?   A.  He ran

to the head of the lead mule to catch them. Q. What did Esher do? A. Esher was standing at the time; he was not doing anything. Q. Was he or not waiting for the hitch to be made and the trip to be taken in? A. I suppose so, yes, sir. Q. When the mules were turned to bring them back to make the hitch did they or not at that time kick and cause the injury which resulted to Howard Esher? A. They were kicking at that time, yes, sir. Q. That was the time the kicking was done, when the mules were being turned to make the hitch? A. Yes, sir."

John Harris, the driver, gave this account of the occurrence.:

"Q. On the trip that was made at the time Howard Esher was injured did you or not make an attempt to make what is called a flying hitch to the empties? A. Yes. Q. You missed it did you not? A. Yes. Q. What happened then? A. I hooked them on to a loaded trip so they could not run away. Q. You hooked them to keep them from running away? A. Yes; then I went up to the front mule to get hold of his head to turn him around. Q. Did you do anything to the mules at that time? A. Not as I recollect. Q. Did you turn them around? A. Yes, after they got up apiece by the turn-out. Q. When you turned them around did or not the Joe mule kick? A. That I could not say, I just had turned my head, and I could not say. Q. Did you see Howard Esher at that time? A. Yes, he just had passed me as I had turned the mules around. Q. Was he injured? A. When I found him yes, sir."

Esher was found at the top of the turn-out, where Harris turned the mules around, on the side of the tunnel, with his face crushed. It is not clear that he attempted to unhook the spreader or that he received his injury in so doing. It was for the jury to determine in what manner he was injured, and there is nothing in the case to compel the conclusion that he received the injury because of his compliance with the request of the driver. Nor would such compliance relieve the defendant from liability if Esher was acting within the scope of his employment and was not guilty of contributory negligence in exposing himself to danger which a person of ordinary prudence ought not to have done because of the known disposition of the mule, and the defendant knowingly used a vicious mule. The evi-

dence is somewhat conflicting as to the length of time Esher had been employed in the position in which he was working at the time of his death. According to the testimony of Patrick Mack, he had been there but a few days, and he was corroborated to some extent by Philip Brown, John Jordan and John Reedy. It does not appear that Esher was instructed as to the viciousness of the mule. Evidence was offered on the part of the defendant that the door boys were instructed to keep away from the mules, but none of the witnesses could remember that Esher had received such instruction. There was evidence, however, that he had talked with other boys in the mine in regard to the bad habits of the mule. The prosecution of the work in the tunnel made it necessary that the teams pass the boys frequently, and therefore they were unavoidably near them to a greater or less degree. There were four mules in the team. Some of the witnesses located the bad mule next to the lead, and some of them next to the rear mule. Under the evidence, the court would not have been warranted in instructing the jury that Esher was guilty of contributory negligence, or that he assumed the risk of his employment because he had knowledge of the vicious habits of the mule. " Where the facts are disputed, where there is any reasonable doubt as to the inference to be drawn from them, or when the measure of duty is ordinary and reasonable care and the degree varies according to the circumstances, the question cannot in the nature of the case be considered by the court; it must be submitted to the jury:" Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600; Gramlich v. Wurst, 86 Pa. 74.

"It is only where the facts and inferences therefrom are undisputed and where the precise measure of duty is determinate that the question is for the court:" McCully v. Clarke, 40 Pa. 399; Reeves v. R. R. Co., 30 Pa. 454; Schum v. R. R. Co., 107 Pa. 8.

An employee will be deemed to have assumed the risks naturally and reasonably incident to his employment, and will be presumed to have notice of the risks which are or should be obvious to one of his understanding and experience, but the employer must maintain instruments and appliances reasonably suitable to the prosecution of his business and which will enable his employees to perform their duties with relative safety

without exposure to risks which are not naturally or reasonably incident to the employment.

" The employee has the right to assume that the employer has provided reasonably safe machinery and appliances for his use, and he does not assume the risk growing out of their defective character unless he has been fully advised that they are defective: " Rummell v. Dilworth, 111 Pa. 343; Cargill v. Laundry Co., 185 Pa. 269; Bartholomew v. Kemmerer, 211 Pa. 277.

It cannot be successfully contended that the risk of injury from the vicious mule was so obvious that Esher ought not to have continued in the service of the company in the tunnel where the mule was used or that if he did so he assumed the risk of injury. If he knew the vicious disposition of the mule, it was still the province of the jury to determine whether from the character of his duties he assumed the risk of injury from this source. The team to which the mule belonged was in daily use drawing loaded cars from the workings in the tunnel and empty cars back, and was in proximity from time to time to numerous employees in the mine.

It was strongly urged by the learned counsel for the apellant that the court erred in refusing the defendant's third point. In affirming it, however, the court would have assumed that the accident occurred because Esher unhitched the mules from the car, but the evidence does not clearly warrant such an assumption. It may be a fair inference under the evidence that the accident occurred because of such action on the part of Esher, but a jury must determine the facts. The jury was carefully instructed that the plaintiffs could not recover if their son was guilty of any act of omission or commission which contributed to the injury, and that if he knew the vicious disposition of the mule he was bound as far as consistent with his duty to stay away from it.

That portion of the charge contained in the first assignment of error which is criticised by the appellant is to be considered in connection with the rest of the charge. It was in substance an instruction that the defendant was chargeable with the legal effect of the knowledge which the law imputed to it, but the question whether the facts existed from which presumption of knowledge arises was left to the jury, and evidence

of the length of time the mule had been used by the company, its bad reputation, and knowledge of its bad habits by the stable boss in whose charge and control it had been for a long time, were circumstances for the jury on the question of knowledge by the defendant.

After a careful examination of the evidence, we conclude that the case was for the jury, and that it was submitted without material error by the court. The judgment is therefore affirmed.