# McMahen v. White, Appellant.

*Practice, C. P.—Trial—Charge—Negligence—Inadequate charge.*

Where a duty is to exercise ordinary and reasonable care, or as otherwise expressed, the care of an ordinarily prudent man, and this varies with the circumstances, it is the province of the court to instruct the jury that the omission to exercise such care is negligence, and the province of the jury to determine whether the conduct of the party established by the weight of the testimony involved the omission of such care.

In an action to recover damages for the death of a horse caused by a collision with the defendant's horse, where there is evidence that the latter was driven at a high rate of speed, and was suddenly and negligently pulled towards plaintiff's side of the road, the failure of the trial judge to mention these matters specifically, does not render the charge inadequate where it appears that the questions involved were submitted to the jury with clear and concise instructions as to the rule of law by which the conduct of the parties was to be judged, and with sufficient reference to the disputed questions of fact to enable the jury to recall the testimony as a substantial whole, and to determine therefrom whether the injury resulted from the omission of either or both parties to exercise such care as reasonably prudent drivers would have exercised under the circumstances; and this is especially so where it appears that the defendant made no request for specific instructions as to any particular phase of the case.

*Negligence—Killing of horse—Negligence of driver—Permitting guest to drive.*

Where an owner of a vehicle accompanied by a guest, both being on a pleasure trip, permits the guest to drive at the latter's request, and is in a position to take control of the reins at any moment, the owner will be liable for an injury caused by a negligent act of the guest in driving the vehicle.

Argued Oct. 4, 1905.    Appeal, No. 44, Oct. T., 1905, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T.. 1902, No. 343, on verdict for plaintiff in case of William H. McMahen v. Stacy H. White.    Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Trespass to recover damages for death of a horse.    Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court and the charge which was as follows:

The facts in the case have been gone over so carefully and fully by counsel for plaintiff and defendant, and they are in themselves so few. so far as they are controlling facts, that I need not

state them again to you. The conceded facts are that these parties were driving along the Wissahickon road, and that there was a collision. The plaintiff's horse and the defendant's horse ran together, and you may reasonably infer that at least one of the parties was traveling at a rapid rate. Perhaps both were, but the result of the impact must necessitate the conclusion that at least one was, because the defendant has testified that the shaft of the plaintiff's carriage pierced his horse's breast to the extent of seventeen inches, and that the shaft of his own carriage pierced the plaintiff's horse's breast to the extent of seven inches. You may, therefore, I think, reasonably infer that the travel of these two parties was, so far as one and perhaps both of them may be considered, not slow travel. You are further to consider that it appears to be conceded that at the time of the accident the road was very dark. The electric lights can best be described by the park guard, who stated that along there, according to the regular method, that spot was pretty well lighted, but that there might be a time or times when there was a cessation in the light, or a falling of it so that it became dark. There seems to be no difficulty about that point. There is no difficulty about understanding that the plaintiff was driving his own horse northward on the proper side of the road. The defendant, however, was not driving his horse. He owned the horse, but he had permitted his guest to drive for him, and accordingly [in considering the proofs you are to consider what under the circumstances that guest was doing, and what she did in driving the horse at that time you may regard as substantially the act of the defendant himself]. [2] He has said with candor that she asked if she might drive just after they left the house where they had dined, and he said she might, and she was driving at the time the accident occurred. It is further undisputed that people in both carriages were thrown out. The plaintiff himself was thrown out, his companion remaining behind, and the defendant and his companion were thrown out, so that we have a further indication that it was not easy driving on the part of both of these parties. One or both of them must have been driving somewhat more rapidly than the ordinary, usual, simple pace. However, I leave that to you. The resolution of all questions of fact is exclusively for you, and whilst I suggest these things as con-

clusions probably or reasonably to be looked for, yet you may reach quite different conclusions, and it is entirely within your province to do so.

Finding the plaintiff and defendant rightfully on the road, because each had a right to travel there, finding in the inception of the history of the transaction each on the right-hand side of the road, it is for you to consider whether the defendant was negligent in his driving to such an extent as to have produced the injury to the plaintiff's horse and wagon, an injury which, had he used proper care, would have been avoidable and probably avoided. If the defendant through his agent used the care which a reasonable man might be expected to use under the circumstances, he is not to be held responsible here. If you find, on the other hand, that his action through his agent was not such in respect of care as a reasonably prudent driver under the circumstances would have exercised, then you are to consider a further question, because even that will not conclude the case against the defendant. The further question is, whether the plaintiff himself was free from all contributory negligence. Was he driving along there in such a way as would be the course of a reasonably prudent driver under the circumstances? If he was not, it makes no difference how much to blame you may regard the defendant as exceeding the rule of care, your verdict should go for the defendant. If he was exercising proper care and the defendant was not, according to my statement of the measure of care to you, then you might find that the verdict should be for the plaintiff.

If you find a verdict for the plaintiff, the measure of damages would be the market value of the horse, of which you heard sufficient evidence to enable you to reach a conclusion, and the necessary outlay of the plaintiff in the premises incident to the result of the very accident itself—outlay in the care of the horse. I do not recall any evidence as to damage to the wagon, although it is claimed in the narr.

Verdict and judgment for plaintiff for $674.13. Defendant appealed.

*Errors assigned* were (1) that the charge was inadequate; (2) portions of charge as above, quoting it; (3) in refusing binding instructions for defendant.

*Alex. Simpson, Jr.,* with him *Alfred J. Wilkinson,* for appellant.—The charge gave the jury no standard to determine what was and what was not negligence : Tietz v. Traction Co., 169 Pa. 516 ; Richards v. Willard, 176 Pa. 181 ; McCord v. Whitacre, 8 Pa. Superior Ct. 277 ; Stuart v. Line, 11 Pa. Superior Ct. 345.

The trial judge erred in charging the jury that the driver of the carriage was defendant's agent, and, as a matter of law, he was chargeable generally for all her acts : Allen v. Willard, 57 Pa. 374 ; Reed v. Allegheny, 79 Pa. 300 ; Carr v. Easton, 142 Pa. 139 ; McCullough v. Shoneman, 105 Pa. 169 ; Dean v. R. R. Co., 129 Pa. 514 ; Carlisle v. Brisbane, 113 Pa. 544 ; Bunting v. Hogsett, 139 Pa. 363 ; Crescent Twp. v. Anderson, 114 Pa. 643 ; Kelton v. Fifer, 26 Pa. Superior Ct. 603 ; Cincinnati v. Stone, 5 Ohio, 38 ; Wood v. Cobb, 95 Mass. 58 ; Kimball v. Cushman, 103 Mass. 194 ; Millsaps v. Ry. Co., 69 Miss. 423 (13 So. Repr. 696) ; Norris v. Kohler, 41 N. Y. 42 ; Hill v. Morey, 26 Vt. 178 ; Oil Creek, etc., Ry. Co. v. Keighron, 74 Pa. 316.

The point for binding instructions ought to have been affirmed : Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241 ; Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 147 ; Kelton v. Fifer, 26 Pa. Superior Ct. 603 ; Welfare v. London, etc., Ry. Co., Law Rep. 4 Q. B. 693 ; Brown v. Piper, 91 U. S. 37.

*J. A. Robbins,* for appellee.—The charge of the learned trial judge was adequate : Tietz v. Traction Co., 169 Pa. 516 ; Richards v. Willard, 176 Pa. 181 ; McCord v. Whitacre, 8 Pa. Superior Ct. 277 ; Stuart v. Line, 11 Pa. Superior Ct. 345.

From his own testimony the acts of his guest while driving under the circumstances described are, as a matter of law, imputable to the defendant : Kimball v. Cushman, 103 Mass. 194 ; Hill v. Morey, 26 Vt. 178 ; Oil Creek, etc., Ry. Co. v. Keighron, 74 Pa. 316 ; Norris v. Kohler, 41 N. Y. 42 ; Cincinnati v. Stone, 5 Ohio, 38 ; Wood v. Cobb, 95 Mass. 58 ; Millsaps v. Ry. Co., 69 Miss. 423 (13 So. Repr. 696) ; Bunting v. Hogsett, 139 Pa. 363 ; Township of Crescent v. Anderson, 114 Pa. 643 ; Kelton v. Fifer, 26 Pa. Superior Ct. 603 ; Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 147 ; Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241.

OPINION BY RICE, P. J., March 12, 1906:

The plaintiff was driving northward in his carriage drawn by one horse on the Wissahickon road, a public highway in Fairmount park, Philadelphia, and the defendant, with a friend who was driving by his permission, was riding in the opposite direction in a carriage drawn by one horse belonging to him. The time was about nine o'clock in an evening in July. At a point where, according to some of the testimony, there was a bend in the road, the two horses collided with such force, that the left shaft of each carriage penetrated deeply the breast of the horse hitched to the other carriage, and in consequence of the injuries both horses died a few weeks later. The evidence adduced by the plaintiff was to the effect, that he was driving at moderate speed, about four miles an hour, on the right-hand side of the road, so that there was ample room for two vehicles to pass, and that the collision would not have occurred if the defendant's horse, which was being driven at an extremely rapid pace—described by one witness as "a runaway speed" and by another as "a dead run"—had not been suddenly pulled over to the east side of the road, in order to pass another vehicle also being driven at a very rapid pace in the same direction as the defendant's. On the other hand, the defendant's testimony was, that his horse was being driven at moderate speed, not over six miles an hour, and was pulled over toward the middle of the road, not for the purpose of passing the vehicle ahead, but in order to go safely around the bend in the road, and that it was very dark at the time and place of the collision. He testified that as soon as he discovered the plaintiff's carriage—"coming up terribly," as he described the speed—he shouted in warning, and as he did so the collision occurred.

The first assignment of error raises a question as to the adequacy of the charge to the jury. The foregoing outline of the testimony shows that it was not complicated, and did not require an extended review and analysis by the court, either to bring it freshly to the recollection of the jury or to enable them to appreciate its true bearing. But it is urged that it is the court's duty in such a case to tell the jury what acts or neglects of the defendant would constitute negligence, and a failure to do so is error. Granting that it was the court's duty

to present to the jury a statement of the matters of fact upon which the case turned, and a clear statement of the law applicable to the facts which might be found by them, it does not necessarily follow that it was its duty to charge that driving at a certain speed, specifying it, or that suddenly pulling the horse to the middle or the other side of the road, either singly or in connection with the other, was or was not a negligent act. "The question was not alone what the defendant had done or left undone, but, in addition, what a prudent and reasonable man would ordinarily have done under the circumstances:" per STRONG J., in McCully v. Clarke, 40 Pa. 399. It is true there are certain acts and omissions which it is the province and the duty of the court to declare constitute negligence, as, for example, the omission of a person about to cross a railroad track to stop, look and listen. A review of the adjudicated cases shows many other acts and omissions which are definitely determined to be, not merely evidence of negligence, but negligence per se. We can conceive of cases, not within that class, in which there might be no controversy as to the facts, and from these it might so clearly appear what course a person of ordinary prudence would pursue under the circumstances that there would be no room for honest difference of opinion between sensible and impartial men upon the question. In these the court would be warranted in treating the question of negligence as one of law. But such cases are exceptional, and it is not claimed that the case at bar belongs to either of these classes. In general, where the duty is to exercise ordinary and reasonable care, or, as otherwise expressed, the care of an ordinarily prudent man, and this varies with the circumstances, it is the province of the court to instruct the jury that the omission to exercise such care is negligence, and the province of the jury to determine whether the conduct of the party established by the weight of the testimony involved the omission of such care. "When the duty is defined, a failure to perform it is of course negligence, and may be so declared by the court. But where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others, where both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved:"

McCully v. Clarke, 40 Pa. 399. This doctrine has been recognized in a multitude of cases, and amongst the very recent ones may be mentioned Rusterholtz v. New York, etc., R. R. Co., 191 Pa. 390 ; Cohen v. Philadelphia & Reading R. R. Co., 211 Pa. 227 ; Esher v. Mineral R. R. & Mining Co., 28 Pa. Superior Ct. 387. The question of the adequacy of the charge of the learned trial judge is to be considered in the light of these familiar principles. A charge is inadequate, it has been held, which fails to present to the consideration of the jury just what the issue is, by a statement of the matters of fact upon which the case turns, and a clear statement of the rules of law applicable to the questions involved : McCord v. Whitacre, 8 Pa. Superior Ct. 277. "An inadequate presentation of the case, when the omission to charge leaves the jury without direction on important questions involved, or plainly tends to mislead them, is ground for reversal : " Earle v. Arbogast, 180 Pa. 409. Here, what was required of the drivers of the horses in the exercise of ordinary and reasonable care under the circumstances, and the extent of performance, were to be ascertained as facts. These questions were submitted to the jury with clear and concise instructions as to the rule of law by which the conduct of the parties was to be judged, and with sufficient reference to the disputed questions of fact to enable the jury to recall the testimomy as a substantial whole, and to determine therefrom whether the injury resulted from the omission of either or both to exercise such care as a reasonably prudent driver would have exercised under the circumstances. To have treated the matter of speed, and the matter of pulling over toward the other side of the road, as separate and independent acts would have had a tendency to mislead. Obviously, they were to be considered together and in the light of all the other circumstances, and the charge of the court was well calculated to secure such consideration at the hands of the jury. It is to be observed further that while the defendant asked for binding instructions, he made no request for specific instructions as to any particular phase of the case. In the absence of such request, and of anything erroneous in the instructions, we think the defendant has no just cause to complain because the court did not charge more in detail as to what was necessary to be found by the jury to warrant a ver-

dict in the plaintiff's favor: Borham v. Davis, 146 Pa. 72. The first assignment is overruled.

The second assignment brings into question the court's instruction, that the jury were to regard what the defendant's guest did in driving the horse at that time as substantially the act of the defendant himself. It is apparent that these instructions cannot be sustained upon the ground that the defendant was negligent in selecting an incompetent driver, for there is no evidence that she was such, aside from that relating to the manner of driving at this particular time. Nor was it essential to the plaintiff's recovery that negligence of the defendant in this particular be proved: Hays v. Millar, 77 Pa. 238. Further, if the defendant's responsibility depended upon proof that he was negligent in not interfering more promptly when she suddenly pulled the horse to the left side of the road, the question should have been submitted to the jury, for there was evidence that he did attempt to take control at that time. In determining as to the propriety of the instructions we are not required to resort to presumptions such as were considered in Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 147, and Kelton v. Fifer, 26 Pa. Superior Ct. 603, and we fully agree with the appellant's counsel that we would not be justified in resorting to inferences which the jury possibly might have drawn, but were not bound to draw. The question is, whether, irrespective of negligence on the part of the defendant in either of the particulars above referred to, and in the absence of conclusive proof that he expressly directed or tacitly assented to the manner in which the vehicle was being managed, it was proper to say to the jury that he was responsible to third parties for the conduct of the driver. The facts as testified to by him were, that he and others had been on a pleasure trip, and were returning to the house of Mrs. Fairlamb; that upon her suggestion and his permission she rode with him because one of the horses of her husband's team was very fractious; and that after they had started on their way, she asked the defendant's permission to drive, which was granted. This is putting the case in as favorable a light for the defendant as is possible under the evidence. There being no dispute that these were the conditions under which the parties were acting, we think the court was right in treating the question of the defendant's responsibility for the

conduct of the driver of his vehicle as one of law. The present chief justice, speaking of the general ground of the operation of the maxim respondeat superior, said: "If the master orders the thing done, he is responsible for the manner in which the servant does it:" Duggan v. B. & O. R. R. Co., 159 Pa. 248; P. & R. R. R. Co. v. Derby, 55 U. S. 468. It has been said that the rule is severe at best: McCullough v. Shoneman, 105 Pa. 169, but it has also been declared with equal authority to be "very important that the principle of respondeat superior should be upheld and maintained for the sake of the general security of society:" Hays v. Millar, 77 Pa. 238; Smith on Master and Servant (Bl. ed.)* 323. At the foundation of the rule is the broad principle that every man in the management of his own affairs, whether by himself or by his agent or servant, shall so conduct them as not to injure another. This principle in no way conflicts with the right to accomplish a lawful object through an independent contractor, without liability for the latter's negligence, or with the right of an owner to deliver property into the custody and control of another under a bailment, without assuming responsibility for the negligence of the bailee or his servants in the management of it. Nor is it conclusive of the responsibility of the master to a servant for the negligence of a fellow servant, for there another principle is involved. But, in general, a master is ordinarily liable to answer in a civil suit for the tortious or wrongful acts of his servant, if those acts were done in the course of his employment in his master's service. To be more particular, a master is ordinarily responsible for an injury resulting from the negligence of his servant while driving the master's vehicle, provided the servant was at the time engaged in his master's business. To warrant the application of this rule, in the absence of negligence on the part of the defendant, the relation of master and servant, as distinguished from the relation of bailor and bailee or the like, must actually exist at the time: Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241. Many of the cases bearing upon that particular phase of the rule are collected in the opinion of Judge PORTER. But this does not imply that the service be rendered under a contract which entitled the driver to compensation, or that he was in the performance of a customary duty incident to his general employment as the

defendant's servant. The person sought to be held responsible must have the right of selecting the person to render the service, but speaking particularly of a case like the present, it is not material whether the latter was driving at the request of the owner or person having the right of control of the management of the vehicle, or was a volunteer. Where a person undertakes voluntarily to perform service for another, who assents thereto, he stands in the relation of a servant to the latter: 14 Am. & Eng. Ency. of Law (1st ed.), 751; Wood on Master and Servant (2d ed.) sections 304, 306. Some point was made of the fact that the driver as well as the defendant was engaged in a matter in which she was personally interested; in other words, as expressed by the appellant's counsel, they were on a joint pleasure trip. This circumstance might have an important bearing upon the question if the defendant had not been the owner of the horse and carriage, nor are we to be understood as implying that ownership is, under all circumstances, the conclusive test of responsibility where the owner is riding in the vehicle. But if all the elements necessary to bring a case within the rule under consideration are present, we are unable to agree that the mere fact that the driver, as well as the owner who is riding in the vehicle, has an interest personal to himself in reaching the destination will relieve the owner from responsibility to third persons. A somewhat extended examination of authorities bearing upon the question warrants us in saying that they generally agree, that the real elements at the foundation of responsibility to third parties of the person sought to be charged as master, in a case like the present, for the negligent manner in which the service rendered for him was performed, are the right to select the person who is to render the service, and the right to control his action while so doing. As has been declared in numerous cases, he must not only have the right to select the servant or agent, but to direct the mode of performance, and to so control him in his acts in the course of his rendition of the service as to prevent injury to others. It was upon the ground that the evidence was sufficient to support a finding that the defendant had the right of control, and that Campbell was driving for him, and that the judgment was affirmed in Kelton v. Fifer. Applying these principles to the case in hand we are quite clear that the facts testified to by

the defendant established the relation between him and the driver which made him responsible to third parties for her negligent management of the vehicle. They plainly distinguish the case from Carlisle v. Brisbane, 113 Pa. 544; Dean v. Penna. R. R. Co., 129 Pa. 514; Jones v. Lehigh and New England R. R. Co., 202 Pa. 81; Little v. Central District & Printing Telegraph Co., 213 Pa. 229, and other cases of the same class. They would be pertinent if the situation of the parties had been reversed, and the driver had been the owner or bailee of the conveyance and the defendant had been riding in it by her invitation ,or permission. But under the defendant's own showing, the driver of his vehicle did not stand to him in the relation of a bailee, he had not parted with his right to control the manner of driving, he could have retaken possession of the reins at any moment, and she was bound to obey his directions as to the manner of managing the vehicle or surrender the reins to him. Having regard to the principle which lies at the foundation of the rule we conclude that there was no error in the instructions complained of. It logically follows that there was no error in refusing the request for binding instructions.

The judgment is affirmed.