## Biedenbach v. Teague

*Murrin & Murrin,* for plaintiff.

*Lee C. McCandless,* for defendant.

GRAFF, P. J. (Specially Presiding), April 22, 1960. —Plaintiffs instituted this action in trespass to recover damages alleged to have been sustained as the result of negligence upon the part of William LeRoy Teague, Jr., Kenneth Kroha and Daniel A. Kroha. At the trial Daniel A. Kroha, the father of Kenneth Kroha, was eliminated as a party-defendant, because of the failure to prove agency.

The jury returned a verdict in favor of plaintiff administrator and against both remaining defendants under the death statute in the sum of $2,000 and a verdict against both defendants under the survival act in the sum of $2,000. This matter now comes before us upon a motion for judgment notwithstanding the verdict and a motion for a new trial.

In considering the motion for judgment notwithstanding the verdict, it is clear that all facts and inferences to be drawn from the testimony must be resolved in the most favorable light to plaintiffs.

At the time of the accident in which the death of

Thomas Beidenbach happened, the automobile in which deceased was a passenger was owned by Daniel A. Kroha, given by him to his son, Kenneth Kroha, for his own use and was being operated by William Teague, Jr., the other defendant.

In support of the motion for judgment notwithstandstanding the verdict, counsel for Kenneth Kroha contends that there was not sufficient evidence to prove that William was operating the car as the agent of Kenneth.

Upon the evening of May 26, 1956, William Teague, Jr., and Kenneth Kroha met in Summit Township, this county, near the village of Herman, in the area all three of the boys lived. Kroha and Teague then picked up Thomas Beidenbach, and the three boys then drove into the City of Butler, where a girl, Patricia Prevost, was secured, as the date of Beidenbach. At the time of the accident Kenneth and William were 17 years of age and Thomas 16 years old. After proceeding to some extent in the City of Butler it was decided to go to the Fire Hall, in the village of Herman, to find two girl friends of William and Kenneth. The girls were not at this place, and thereafter the boys proceeded to Geottler's cottage, located a short distance from Herman, in search of the girls. The car was driven by Kenneth to a place approximately 500 feet from the cottage. William and Kenneth walked to this cottage and talked to the girls for a while. Thomas and Patricia remained in the automobile.

William Teague left the cottage, unaccompanied by Kenneth, proceeded to the automobile, where the keys to it were lying on the seat, drove the car to the cottage and went past it, out the highway, in order to turn the automobile, and bring it back to the cottage. When the automobile had gone by the cottage for a short distance with Teague driving and Thomas and Patricia in the back seat, it suddenly left the highway upon the right

side thereof, proceeded some distance, turned over, pinning Thomas under it, from which he received injuries immediately causing his death.

The question now presented is whether the evidence is sufficient to prove that William Teague was acting as the agent of Kenneth Kroha at the time the accident occurred.

It appears from plaintiff's evidence that Daniel Kroha owned the automobile, but that it had been purchased for the use of his son Kenneth. Daniel Kroha permitted his son to operate the car but did not allow anyone else to do so, and this fact was known to William Teague. William Teague did not have a driver's license. However, he had been operating the Kroha car upon a number of previous occasions, with the knowledge and consent of Kenneth. He had driven the car upon the public streets or highways five or six times prior to the evening of May 26th and had also operated the car upon private property at least the same number of times. Although Kenneth operated the car upon the evening of the fatal accident, at one time upon the highway near the village of Herman, Teague had driven the automobile for a short distance.

William Teague testified as follows, relative to what happened at the cottage:

"Q. You didn't go in the cottage?

"A. No.

"Q. Well then, what happened?

"A. Well, then, I said to Kenny that I would go down and get the car and bring it up.

"Q. All right. Did he say anything?

"A. He said something but I didn't hear him clear . . .

"Q. As you left the cottage to go down and get the car did Kenneth holler at you, or something of that sort?

"A. No.

"Q. He didn't come after you?

"A. No."

Upon cross examination Teague testified as follows:

"Q. At any time did you ever take this on a mission under the direction of Kenneth?

"A. How do you mean, on a mission?

"Q. To do an errand for him?

"A. No, sir.

"Q. You never did?

"A. No.

"Q. And this particular time you were not doing anything for Kenneth?

"A. No sir."

It is obvious that William did not understand the full import of these questions, and later testified as follows:

"Q. And it was your intention to drive the car up, turn around and come back and pick up Kenneth; is that right?

"A. Yes, sir."

Patricia Prevost testified as follows:

"Q. Bill came back to the car?

"A. Yes.

"Q. Was he by himself?

"A. Yes, he was and he got in the car and started up and said that he was going to turn the car around . . .

"A. Well, we went past the cottage and Bill honked the horn . . .

"A. I seen someone standing in the doorway by the cottage but I don't know who it was, and we drove on down the road."

The natural place for turning an automobile going past the Geottler cottage was out the road, at Bill Yost's lane.

On behalf of defendant, Kenneth Kroha testified as follows:

"Q. Did you at any time tell Bill to bring the car up for you?

"A. No, sir.

"Q. You never did?

"A. No, sir.

"Q. You heard him say as he started down that he was going to get the car?

"A. Yes, sir; he said something about getting the car.

"Q. You told him to wait and you would go with him?

"A. And I told him to wait a minute and I would be there."

William testified that he did not hear Kenneth saying anything relative to waiting for him.

Agency is defined to be the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other to so act. The authority of the agent to do an act may be created by written or spoken words or conduct of the principal, which reasonably interpreted causes the agent to believe that the principal desires him so to act on the principal's account. Where the authority of an agent is to be implied from the conduct of the parties, the fact and scope of agency are for the jury: Brock et al., Exrs., v. Real Estate Land Title and Trust Co., 318 Pa. 49.

In support of plaintiff's contention that William was the agent or servant of Kenneth at the time he operated the automobile it appears that William had driven this automobile with Kenneth's permission at least 12 times previous to the night of the accident, and on this particular evening had driven it a short distance, on the road to Herman. The only logical conclusion is that William advised Kenneth that he intended to get the car and bring it up to the cottage,

so that they might then proceed upon their way homeward. The car went past the cottage in order that it might be turned around at the nearest proper place. It is true that Kenneth did not advise William specifically to get the car and did state something to him which he did not hear. However, it is proper to conclude that William reasonably believed that he had the authority to bring the car back, to further Kenneth's benefit or purpose in going home. This is particularly true in view of the fact that William proceeded 500 feet to secure the car without any audible protest from Kenneth.

We conclude that the fact of agency and the scope thereof was a question for the jury, which was not required to accept Kenneth's testimony that he had, in an audible voice, asked William to wait for him. One volunteering services without an agreement for or expectation of reward may be the servant of one accepting such services: Restatement of Agency, §225. See also Rowand v. Germantown Trust Co., 248 Pa. 341.

Where a person undertakes voluntarily to perform services for another, who assents thereto, he stands in the relation of servant to the latter: McMahen v. White, 30 Pa. Superior Ct. 169, 178.

We are of the opinion that the question of agency was entirely for the jury's determination, and the motion for judgment notwithstanding the verdict should be refused.

In support of the motion for a new trial, defendant Kroha contends that the statement of claim did not contain a sufficient averment of agency.

Paragraph (c) of the statement is as follows:

"(c) At the above time and place, defendant, William LeRoy Teague, was operating such automobile as an agent of Kenneth Kroha."

This averment was specifically denied. If defendant desired any further pleading in this respect such could

have been obtained, if necessary, by filing preliminary objections.

Defendant Kroha also contends that the verdict was against the weight of the evidence. This matter has been previously discussed; it appears that implied agency was sufficiently proven and the credibility of the witnesses in this respect was a matter for the jury's determination.

*Order*

And now, April 22, 1960, the motion for a new trial is refused and judgment directed to be entered upon the verdict upon payment of the jury fee.

*Eo die*, exception granted and bill sealed.

And now, April 22, 1960, the motion for judgment notwithstanding the verdict is refused and judgment to be entered upon the verdict upon payment of the jury fee.

*Eo die*, exception granted and bill sealed.